**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

DAVID LAWLIS,        )
                                           )
          Plaintiff,            )
                                           )
    vs.                         )       Case No. CIV-13-823-D
                                           )
MOORE IRON & STEEL CORP.,    )
                                           )
         Defendant.         )

## **ORDER**

Plaintiff David Lawlis ("Lawlis") brings this action for breach of contract and violation of Oklahoma's Protection of Labor Act. He contends Defendant Moore Iron & Steel Corp. ("MISCO") (1) failed to pay him wages that were earned and due, (2) failed to pay him all commissions to which he was entitled, (3) failed to adequately and timely offer him extended insurance coverage after the cancellation of his company-provided insurance, (4) unlawfully made deductions from his salary for insurance that was not provided, and (5) failed to compensate him for accrued–but unused–vacation time. Lawlis has moved for partial summary judgment ("Motion") as to his claims for unpaid commissions, wages, and wrongful insurance deductions [Doc. No. 53]. MISCO has responded ("Response") [Doc. No. 73]. The matter is fully briefed and at issue.

# BACKGROUND

There is no genuine dispute as to the following facts except where noted. MISCO is a storage tank fabricator; it manufactures storage tanks for oil, asphalt, ethanol and other chemicals. On January 1, 2011, the parties executed a written Employment Agreement (the "Agreement") under which Lawlis was employed as MISCO's sales representative.[1] The Agreement was a pre-printed, fill-in-the-blank template that Jason Moore (MISCO's former president, now CEO) downloaded from the Internet (Depo. of Jason Moore at 107:1-10). Paragraph 3 of the Agreement stated Lawlis was to be compensated as follows:

3.   Compensation

    (a)   Subject to the following provisions of this Agreement, during the Employment Period the Employee shall be compensated for his services as follows:

    (b)   He shall receive an annual salary; payable in monthly or more frequent installments, in an amount which shall initially be $75000 per annum, subject to such increases as may from time to time be determined by the Company.

    *2% of **their** gross sales on **newly acquired contracts** for the period of 1 year from the effective date of the **newly***

---

[1] Lawlis alleges MISCO hired him "because he brought them a 1000 barrel [bbl] crude oil storage tank design, which was a new product, not previously fabricated or sold by MISCO." Second Amend. Compl., ¶ 8 [Doc. No. 51]. MISCO denies this contention and states it was building such tanks prior to Lawlis' employment. Def. Resp. at 1 [Doc. No. 73]; Aff. of Jason Moore, ¶ 2 [Doc. No. 73-8].

> **acquired contract**. *1% each year thereafter for any perpetual business on the **newly acquired contracts**, so long as employment continues with Moore Iron And Steel*.
>
> (c)    He shall be entitled to vacations of not less than [2 weeks] per year.
>
> (d)    He shall be entitled to such other perquisites as may be customarily granted by the Company to employees of similar rank and position.

(Pl. Motion, Ex. 2) (emphasis added)).

It is the parties' contrasting interpretations of the terms "their" and "newly acquired contracts" that form a considerable part of this dispute. Lawlis contends the word "their" refers to MISCO, and the Agreement, construed against MISCO as drafter, requires he receive a 2% commission of MISCO's gross sales for all tanks sold, whether to an existing customer or one obtained after his hiring (Pl. Motion at 11-15; Aff. of David Lawlis, ¶¶ 8-9). In support of this contention, Lawlis argues that all references to him use the terms "he" and/or "Employee," and if MISCO wanted to limit his commissions to only tanks personally sold by him, the Agreement would have – and could have – read "2% of **_his_** gross sales on newly acquired contracts." (Pl. Motion at 13) (emphasis in original). According to Lawlis, the inclusion of the word "their" clearly refers to MISCO since the Agreement relates to "their" gross sales and not the "Employee['s]" or "his" sales (Pl. Reply at 6) [Doc. No. 75].

MISCO, conversely, urges the word "their" clearly refers to Lawlis and interprets the Agreement as allowing Lawlis to receive a 2% commission for only the 1,000 bbl tanks that *Lawlis* sold to the company's *new customers* (Moore Depo. at 31:13-18, 97:12-22, 109:6–112:25, 113:6-18, 129:19-21–130:1-5, 131:22-25; Depo. of Pat Howell at 38-40, 43:1-25–44:1-3; *see also* Def. Resp. at 15). According to MISCO, the Agreement, when read in its entirety, refers to MISCO only as "the Company," "its" or "Moore Iron" (Def. Resp. at 3-4), and it would thus be nonsensical to (1) believe MISCO would use a different descriptive term when, on all previous occasions in the Agreement, MISCO is referenced using the singular description "it," (*Id*. at 4), and (2) believe the parties intended for Lawlis to receive such a financial windfall by receiving commissions for tanks he did not personally sell. *Id*.

Lawlis worked at MISCO for two years until his termination on February 1, 2013. MISCO had no policy on when or how often commissions were to be paid (Depo. of Michael McCullough at 46:21-25–47:1-10), and the Agreement was silent on what data would be used to calculate commissions. Though MISCO's practice was to use sales reports to track commissions, it did not maintain such reports and had no system or procedure in place to track Lawlis' commissions (Moore Depo. at 15:11-15, 23:23-25–24:1-7, 26:21-22, 57-60, 65-68; Howell Depo. at 21-24, 108:21-25). Rather, it depended on Lawlis to maintain such documentation and assumed he would do so

4

(Moore Depo. at 28:3-22, 168:14-25; Howell Depo. at 23:5-12, 37:17-25–38:1). Lawlis, however, did not regularly maintain any sales records, although MISCO requested the information from him (Moore Depo. at 61-63). The Agreement is silent on this issue as well, and the parties charge each other with the responsibility of tracking Lawlis' sales (Moore Depo. at 61:2-25–63:9-14).[2]

The conundrum this created is evidenced in the parties' correspondence about Lawlis' commissions, which reflects confusion among MISCO's own ranks as to how the commissions were to be calculated. A year after his arrival, Lawlis asked Mike McCullough, MISCO's Chief Financial Officer, to provide an accounting of his commissions. McCullough responded that if Lawlis "could send [him] a list of the tanks [Lawlis] sold to date, it would greatly increase the speed in which I could calculate your percentage." Lawlis answered:

Mike,

---

[2]To illustrate, on June 29, 2012, Pat Howell, MISCO's CEO during Lawlis' employment, sent Lawlis an email asking him to resume sending a weekly report detailing who he had contacted and "what was coming up." Lawlis said he had *never* sent in a sales report but agreed to produce one. Several months later, in December 2012, the two men had a heated email exchange after Howell pointedly demanded that Lawlis provide weekly reports "detailing calls, visits, and other activities that indicate [Lawlis'] contribution to sales of the goods and services provided by MISCO." Lawlis responded by requesting Howell to identify the specific contractual provision requiring him to maintain and submit such reports and accused Howell of retaliating against him for requesting an accounting to determine the amount of his commissions, as discussed above. *See* Def. Resp. at Exs. 5-6(a).

This should be fairly easy. ***All of the 1,000 bbl Tanks ordered is what I am to be paid commissions on***, as per Tom, Jason and Pat. With some orders having a different sales price, 45K -- 55K -- 115K Ea. + accessories and others a different price for Catwalk and adders, I do not know the total numbers.

*I would love to have a better accounting of what I have sold other than all the 1000 bbl tanks, but that is yet to be determined by the orders received*.

Plains Oklahoma, Plains SW, Plains Gulf Coast, Pacer Energy, Centurion, BKEP, Hoover, Vitol, Banner LP, Clayton Williams. Names that come to mind—

Let me know if I can help any further

Thanks,

(Pl. Motion, Ex. 12) (emphasis added). The record shows at least one of MISCO's owners, Tom Simpson, echoed this sentiment and believed Lawlis was to receive commissions on all sales of 1,000 bbl tanks sold by MISCO (Moore Depo. at 183:15-25–184:1-4; Howell Depo. at 44:4-13) though others disagreed. For example, when McCullough forwarded the above email to Pat Howell, Howell responded:

[Lawlis] would like to have a better accounting of what he's sold? ***I do not recall anyone but Tom saying [Lawlis] should be paid for every tank sold out of this shop***.

***I think any commission he may or may not be owed for the sale of tanks he's not even aware of, let alone the company that bought them is a matter of interpretation of his contract***. I have been taking an informal poll of the owners lately to get a consensus decision on this. We may or may not have a meeting in the near future but plan to have a vote

and decision on this item either way.

(Pl. Motion, Ex. 12) (emphasis added). Despite the lack of any formal record keeping, Lawlis ultimately received commissions totaling $47,595.

While at MISCO, Lawlis was insured under a company health insurance plan provided by Coventry Health Care. On November 1, 2012, MISCO's plan with Coventry terminated and it sent Lawlis an enrollment form with a new provider (United Healthcare), which he never executed (McCullough Depo. at 35:22-25–36:1-9). This resulted in Lawlis being uninsured for the remainder of his employment. *Id*. MISCO, nonetheless, continued to withhold insurance premiums from Lawlis' salary, an act McCullough called "an oversight" (McCullough Depo. at 36:10-21, 37:6-12).

In November 2012, Howell informed Lawlis that MISCO's owners wanted to terminate the Agreement and retain Lawlis solely as a salaried employee. This was an "all or nothing" proposal (Howell Depo. at 96:19-23), which Lawlis rejected. The next month, Lawlis demanded an accounting for the full amount of commissions he believed he was owed. However, due to the lack of sufficient record keeping, no accounting was performed. The following month, Lawlis was terminated for not agreeing to MISCO's proposal and poor job performance (Moore Depo. at 159:3-9; Howell Depo. at 98:5-7). Lawlis subsequently hired an attorney, who wrote several letters to Howell (dated January 22, 2013, February 4, 2013, and February 13, 2013)

in an attempt to schedule a meeting to resolve the amount of commissions owed. On February 18, 2013, MISCO's counsel responded, stating that the Agreement was a contract of unlimited duration and terminable at will. That letter was followed by two more letters from Lawlis' counsel (dated February 27, 2013 and March 12, 2013) attempting to settle the matter. Such efforts were unsuccessful, and Lawlis filed this suit.

## STANDARD

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). A movant may establish that a fact cannot be genuinely disputed by citing to particular parts of depositions, documents, electronically stored information, affidavits, declarations, stipulations, discovery responses, or other materials. Fed. R. Civ. P. 56(c)(1)(A).

The Court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Tolan v. Cotton*, __ U.S. __, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). An issue is "genuine" if there is sufficient evidence on each side

so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004). Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007).

## DISCUSSION

Lawlis seeks judgment as a matter of law with regard to his claims that (1) MISCO breached the Agreement, and (2) he is entitled to unpaid commissions totaling $163,185.12, unpaid salary totaling $2,888.88, withheld insurance premiums in the amount of $145.67, and liquidated damages (Pl. Motion at 24). Lawlis also seeks an award of his attorney's fees and costs. *Id*. MISCO contends it has paid all commissions owed to Lawlis and believes it even *overpaid* him by approximately

$4,700 (Moore Depo. at 45:20-25, 160:10-17; Howell Depo. at 14:22-25–15:1-7).

MISCO admits Lawlis was not paid a salary for the last two weeks of January prior

to his termination (Moore Depo. at 165:16-25–166:1-9), but contends this is excused

due to, *inter alia*, Lawlis' breach of fiduciary duty via his contact with another

company to sell tanks (Def. Resp. at 9, 20-22).

This Court begins its analysis by noting that cases such as the present are

generally ill-suited for summary adjudication:

> At trial in a case like this, the intention of the parties often must be
> divined from self-serving testimony offered by partisan witnesses whose
> recollection is hazy from passage of time and colored by their conflicting
> interests. . . . Even though the parties may have shared a common
> understanding of a transaction at the time of the deal, now that
> circumstances have changed and new financial incentives have arisen,
> one side may wish it had a different agreement. . . . Nevertheless, when
> conflicting evidence is presented such that the ambiguities in a contract
> could legitimately be resolved in favor of either party, it is for the
> ultimate finder of fact–not the court on summary judgment–to interpret
> the contract.

*SCO Group, Inc. v. Norvell, Inc.*, 578 F.3d 1201, 1215 (10th Cir. 2009) (citations and

internal quotations omitted). With this caveat in mind, the Court addresses the parties'

respective arguments regarding the claims at issue.

# I. LAWLIS' BREACH OF CONTRACT CLAIM

Oklahoma law requires three elements for breach of contract: (1) the formation of a contract; (2) a breach thereof; and (3) actual damages suffered from the breach. *Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843. Determining whether a contract has been breached requires an interpretation of the contract as a whole. Oklahoma's statutory rules of contract construction establish the following: (1) the language of a contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity (*Id*. §§ 154, 155); (2) a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others (*Id*. § 157); (3) a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect (*Id*. § 159); (4) words of a contract are to be given their ordinary and popular meaning (*Id*. § 160); and (5) a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates (*Id*. § 163). The court should not focus on a particular clause or take language out of context. *Shawnee Hosp. Auth. v. Dow Constr., Inc*., 1990 OK 137, ¶ 6, 812 P.2d 1351, 1353.

Construction of an unambiguous contract is a matter of law for the Court. *Ahlschlager v. Lawton Sch. Dist., Indep. Sch. Dist. No. 088 of Comanche Cty.*, 2010

OK 41, ¶ 19, 242 P.3d 509, 515. If a contract is complete in itself, and when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended and such intention cannot be divined from extrinsic evidence but rather from a four-corners examination of the instrument. *Otis Elevator Co. v. Midland Red Oak Realty, Inc*., 483 F.3d 1095, 1101-02 (10th Cir. 2007). Whether a contract is ambiguous and requires extrinsic evidence to resolve its ambiguity is also a question of law. *Pitco Prod. Co. v. Chaparral Energy, Inc*., 2003 OK 5, ¶ 12, 63 P.3d 541, 545. A contract term is ambiguous "if it can be interpreted as having two or more meanings." *Ahschlager*, 242 P.3d at 515 (citing *K & K Food Servs. v. S & H, Inc*., 2000 OK 31, ¶ 8, 3 P.3d 705, 708).[3] "The determination of whether a contract is ambiguous is made only after applying the pertinent rules of construction." *Atain Specialty Ins. Co. v. Tribal Const. Co*., 912 F. Supp. 2d 1260, 1268 (W.D. Okla. 2012) (citations omitted).

If a contract is ambiguous, it will be construed against the drafter. *McMinn v.*

---

[3]"The test for ambiguity is whether the language 'is susceptible to two interpretations on its face ... from the standpoint of a reasonably prudent lay person, not from that of a lawyer.' " *Atain Specialty Ins. Co. v. Tribal Const. Co*., 912 F. Supp. 2d 1260, 1268 (W.D. Okla. 2012) (quoting *American Economy Ins. Co. v. Bogdahn*, 2004 OK 9, ¶ 11, 89 P.3d 1051, 1054). "The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous. A contract is ambiguous if it is reasonably susceptible to at least two different constructions." *Id.* (quoting *Pitco Prod. Co.*, 63 P.3d at 545–46).

*City of Okla. City*, 1997 OK 154, ¶ 14, 952 P.2d 517, 522. Here, the Agreement was a standard, pre-printed form contract that was downloaded from the Internet by MISCO. Thus, any ambiguities therein are construed against MISCO. *See Westchester Resco Co., L.P. v. New England Reinsurance Corp.*, 818 F.2d 2, 3 (2d Cir. 1987) ("Where an ambiguity exists in a standard-form contract supplied by one of the parties, the well-established *contra proferentem* principle requires that the ambiguity be construed against that party.") (citing *Restatement (Second) of Contracts* § 206 & cmt. a (1981)). When extrinsic evidence is required to discern the parties' intent, construing the contract then involves a mixed question of law and fact that, under proper instructions from the court, should be submitted to the jury for determination. *Ahschlager*, 242 P.3d at 515.

### A. Unpaid Salary

MISCO admits Lawlis was not paid his salary for the last two weeks of January prior to his termination (Moore Depo. at 165:16-25–166:1-9), but contends it had a right to withhold payment because he admitted at his deposition to acting on a competitor's behalf and that he had no duty of loyalty to MISCO as of January 8, 2013. (Def. Resp. at 9). In a previous order, this Court determined MISCO *mischaracterized* Lawlis' testimony in this regard. *See Lawlis v. Moore Iron & Steel Corp.*, No. CIV–13–823–D, 2014 WL 7403854, at *2 (W.D. Okla. Dec. 30, 2014).

13

That conclusion holds true today. Viewing the evidence in the light most favorable to MISCO, the Court finds the referenced testimony does not establish Lawlis either worked for a "competitor" or was "employed by or otherwise engage[d] in or interested in any business in competition with [MISCO], or with any of its subsidiaries or affiliates." (Agreement, ¶ 5). MISCO has the burden here of presenting sufficient evidence show a genuine issue for trial; to do so a non-movant must present facts such that a reasonable jury could find in its favor. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). On this issue, MISCO has failed to carry said burden in establishing it was excused from paying Lawlis' remaining salary and summary judgment should be granted on this claim.

### B. Unpaid Commissions

As noted, Lawlis contends the term "their" in paragraph 3 of the Agreement refers to MISCO, which means the Agreement requires he receive a 2% commission of MISCO's gross sales for all tanks sold, whether to an existing customer or one obtained after his retention. MISCO contends "their" refers to Lawlis and concludes that he receive a 2% commission for only the 1,000 bbl tanks he sold to new customers. Applying the aforementioned rules of construction, the Court finds the Agreement, in this regard, is ambiguous and resort to extrinsic evidence is required. Even construing the Agreement against MISCO, the Court finds paragraph 3 is

14

susceptible to two interpretations on its face. The plural possessive pronoun "their" might just as well, or more reasonably, be applied to MISCO as to Lawlis, since there is nothing in the context or position of terms to indicate definitely to which of the parties the word refers. Likewise, the phrase "newly acquired contracts" is ambiguous as it is an undefined term, and may reasonably be interpreted to mean (1) MISCO's new customers or (2) new purchase orders from either an existing or new customer.

Nonetheless, resort to extrinsic evidence does not aid this Court in its construction. The record is devoid of any evidence of the parties' negotiations leading up to the Agreement, and their course of dealing does not indicate how commissions were calculated and paid. *See Payne v. King's Van & Storage, Inc*., 1961 OK 293, ¶ 13, 367 P.2d 173, 176 ("Where the meaning of the terms used in a written contract is not clear, but such terms have been construed and acted upon [by] the parties interested, such construction will be adopted, even though the language of the contract may be susceptible of another construction.") (citation omitted). When asked how he knew how much to pay Lawlis for a commission, Mike McCullough testified Pat Howell would simply tell him to write a check for a specific amount, without any supporting documentation (McCullough Depo. at 54:12-19). Although the evidence indicates Lawlis and one of MISCO's owners believed he was to receive a 2% commission on all 1,000 bbl tanks sold by MISCO, this is not a determination for the

15

Court to make, but one that should be submitted to a jury for determination. *Beaver Creek Coal Co. v. Nevada Power Co.*, 968 F.2d 19, 1992 WL 113747, at *2 (10th Cir. May 27, 1992) (unpublished) ("an ambiguous contract cannot be interpreted on summary judgment if genuine issues of material fact exist over the parties' intended meaning.") (citing *Gomez v. American Elec. Power Serv. Corp.*, 726 F.2d 649, 651 (10th Cir.1984)); *Cinocca v. Baxter Labs., Inc.*, 400 F.Supp. 527, 532 (E.D. Okla. 1975) ("cases involving ambiguous contracts are inappropriate for summary judgment as there are unresolved material issues of fact to be determined by the trier of fact.") (citations omitted).

In reaching this conclusion, the Court finds no merit in MISCO's contention that the contract should be rescinded due to mutual mistake, or that a valid contract was not made since it was of unlimited duration (Def. Resp. at 14-17). "Rescission in its most basic form is an equitable remedy designed to return the parties to the status quo prevailing before the existence of an underlying contract." *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1183 (10th Cir. 2012) (citations omitted). "To obtain rescission of a contract due to a mutual mistake, it must be shown that the mutual mistake is of a 'past or present fact, material to the agreement, and ... not ... a mistake in prophecy, opinion, or in belief, relative to an uncertain event,' ... or a 'mistake as to a material part of the agreement so as to prevent a meeting of the minds upon that

issue.'" *Sabine Corp. v. ONG Western, Inc.*, 725 F.Supp. 1157, 1189 (W.D. Okla. 1989) (citations omitted). "[A]s when reformation is sought to correct a mutual mistake, a party seeking rescission must show that he was free from negligence in making the agreement." *Id.* (citing *Ware v. City of Tulsa*, 1957 OK 148, 312 P.2d 946, 950). "Evidence of a mutual mistake and of lack of negligence by the party seeking rescission must be clear and convincing." *Id*.

MISCO has not shown by clear and convincing evidence that a mutual mistake existed as to Lawlis' commissions. The evidence supports a finding that, at minimum, Lawlis and one of MISCO's owners believed he was to receive a 2% commission on all sales of 1,000 bbl tanks. Moreover, as drafter of the Agreement, MISCO has not shown it was free from negligence in making the contract.[4] MISCO is also not entitled to rescission due to unreasonable delay in seeking the requested relief. *Reed v. Lock*, 1965 OK 2, ¶ 15, 398 P.2d 488, 490.

Likewise, MISCO's contention that the Agreement is void due to being of indefinite duration is tenuous at best. Under Oklahoma law, an employment contract for indefinite duration is terminable at will by either party. *Vice v. Conoco, Inc.*, 150 F.3d 1286, 1288 (10th Cir. 1998); *Hayes v. Eateries, Inc.*, 1995 OK 108, ¶ 7, 905 P.2d

---

[4]This springs from the equitable maxim, "he who seeks equity must do equity." *Worthington v. Anderson*, 386 F.3d 1314, 1319 (10th Cir. 2004).

778, 781. It is one thing to say such contracts are terminable at will; it is quite another to say such contracts are per se *unenforceable*, especially under the facts presented here. To draw such a conclusion would be inappropriate here, especially where one party has provided services for which he is entitled to compensation.

In sum, summary judgment is granted to Lawlis on his breach of contract claim for unpaid wages but denied as it relates to unpaid commissions.

## II.    LAWLIS' STATUTORY WAGE CLAIM

To establish a wage claim under the Oklahoma Protection of Labor Act, 40 OKLA. STAT. §§ 165.1 *et seq.*, an employee has the burden of establishing the following elements: (1) an employer-employee relationship, (2) wages are earned and due or provided in an established policy, (3) employment was terminated, and (4) the employer failed to pay the employee's wages at the next regular pay day after termination. *Coen v. SemGroup Energy Partners G.P., LLC*, 2013 OK CIV APP 75, ¶ 17, 310 P.3d 657, 662.

Under the Act, "wages" is defined as:

> compensation owed by an employer to an employee for labor or services rendered, including salaries, commissions, holiday and vacation pay, overtime pay, severance or dismissal pay, bonuses and other similar advantages agreed upon between the employer and the employee, which are earned and due, or provided by the employer to his employees in an established policy, whether the amount is determined on a time, task, piece, commission or other basis of calculation.

18

40 OKLA. STAT. § 165.1(4); *see also Coen*, 310 P.3d at 662-63 ("Pursuant to this definition, an employee's 'wages' are the amount the employer has offered or promised to pay as compensation for the employee's labor or services rendered and are earned and due."). Whenever an employee's employment terminates, the employer shall pay the employee's wages in full, less offsets and any amount over which a bona fide disagreement[5] exists, at the next regular designated payday. *Id*. § 165.3(A). If the employer fails to pay wages, it shall be liable for "liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the employer willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller." *Id*. § 165.3(B).

### A. *Unpaid Salary and Commissions*

For the reasons stated above, the Court finds summary judgment appropriate for Lawlis' statutory claim for unpaid wages. Lawlis has made a *prima facie* showing of an employment relationship, wages earned and due, his termination, and MISCO's

---

[5]A "bona fide disagreement" exists "if the employer holds an honest and sincere belief that the wages claimed are not owed." *Campbell v. Indep. Sch. Dist. No. 01 of Okmulgee Cnty*., 2003 OK 73, ¶ 24, 77 P.3d 1034, 1041; *see also* 40 OKLA. STAT. § 165.1(6) (defining term as "an honest and sincere belief or assertion based on a dispute of a determinative fact or application of law under this title which is supported by relevant evidence.").

failure to pay wages at the next regular pay day. An award of liquidated damages in the amount equal to the unpaid salary is also appropriate, as the Court finds there was no *bona fide* disagreement over the salary owed. MISCO's reasons for withholding Lawlis' salary finds no support either in fact or law. Nonetheless, as indicated *supra*, summary judgment is not appropriate for Lawlis' claim for unpaid commissions, as genuine issues of material fact exist over the precise nature of commissions owed. Therefore, Lawlis is entitled to damages in the amount of $2,888.00, which indicates his gross salary for the last two weeks he was employed, plus liquidated damages.

### B.     *Withheld Insurance Premiums*

The Court finds summary judgment is proper as to Lawlis' wage claim for improperly withheld insurance premiums. MISCO admits it withheld insurance premiums from Lawlis' paycheck while he was uninsured and such withholding was improper. That MISCO disputes the amount owed is of no consequence to the fact it withheld the premiums without justification. MISCO's constructed factual dispute does not save it from summary judgment on this claim. Accordingly, Lawlis is entitled to damages in the amount of $145.67, the total amount withheld.

## CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent any issue was not specifically addressed above, it is either moot or without merit. For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment [Doc. No. 53] is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** as to Plaintiff's breach of contract / statutory wage claim for failure to pay salary earned and due, **GRANTED** as to the wage claim for deductions for insurance coverage that was not provided, and **DENIED** as to the breach of contract / statutory wage claim for unpaid commissions.

IT IS SO ORDERED this __28th__ day of December, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE